IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID CHESTER PIMM,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR A REDUCTION IN SENTENCE**<br><br>Case No. 2:15-cr-00483-RJS<br>Case No. 2:18-cr-00434-RJS<br><br>Chief Judge Robert J. Shelby |

Before the court is Defendant David Chester Pimm's Emergency Motion for a Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).[1] The United States (Government) opposes the Motion.[2] For the reasons explained below, the Motion is DENIED.

## BACKGROUND

On March 24, 2017, Pimm pleaded guilty to two counts of wire fraud,[3] and the court sentenced him to probation for sixty months.[4] On September 19, 2018, Pimm was indicted on nineteen counts of access device fraud, which violated the conditions of his probation.[5] In February 2019, Pimm pleaded guilty to one count of access device fraud, and the court found Pimm had violated the terms of his probation.[6] For his access device fraud, the court sentenced

---

[1] Pimm filed the same Motion in his two criminal cases: Case No. 2:18-cr-434 (434 Case): Dkt. 32 and Case No. 2:15-cr-483 (483 Case): Dkt. 66. To avoid duplicative citations, the court's citations to Pimm's Motion are limited to the Motion in the 434 Case.

[2] Like Pimm, the Government filed the same memorandum opposing Pimm's Motion in both cases. *See* 434 Case: Dkt. 34; 483 Case Dkt. 67. The court cites to the 434 Case when referencing the Government's opposition.

[3] 483 Case: Dkt. 33.

[4] 483 Case: Dkt. 40.

[5] 434 Case: Dkt. 34 at 2; *see* Dkt. 1.

[6] 434 Case: Dkt. 17 at 1; Dkt. 21.

1

Pimm to twenty-one months imprisonment.[7] The court also sentenced Pimm to twenty-four months imprisonment for violating the terms of his probation.[8] Pimm was ordered to serve his sentences consecutively.[9] He is currently incarcerated in the Federal Bureau of Prisons (BOP) Satellite Prison Camp in Tucson, Arizona (the Prison), and has served about 21 months of his 45-month sentence.[10]

On April 24, 2020, Pimm submitted a request to the prison warden that his sentence be reduced, which the warden denied on May 5, 2020.[11] Pimm then filed his Motion, requesting the court "re-sentence him to a sentence of imprisonment of time-served or, alternatively, a sentence of time-served followed by a term of supervised release."[12] Pimm argues the court should grant his request because he is at a higher risk of serious complications or death if he contracts COVID-19 due to his age—fifty nine (59)—and underlying health conditions—hypertension and hyperthyroidism.[13]

## LEGAL STANDARD

Because 18 U.S.C. § 3582(c)(1)(A) was recently amended, some discussion of the statute's history is necessary before outlining the legal standard applicable to Pimm's Motion.[14] The prior version of § 3582(c)(1)(A) allowed only the Director of the BOP to file a motion to reduce a defendant's sentence.[15] In December 2018, Congress passed the First Step Act, which

---

[7] 434 Case: Dkt. 28.

[8] 483 Case: Dkt. 61.

[9] 434 Case: Dkt. 28; 483 Case: Dkt. 61.

[10] 434 Case: Dkt. 32 at 2; Dkt. 34 at 2, 6.

[11] 434 Case: Dkt. 32 at 3.

[12] *Id.* at 1.

[13] *See id.* at 2.

[14] *United States v. Perez*, Case No. 88-10094-1-JTM, 2020 WL 1180719, at *1 (D. Kan. Mar. 11, 2020).

[15] *Id.*

amended § 3582(c)(1)(A) "to authorize defendants to file their own motions for compassionate release."[16]  Thus, under the current statute, either the Director of the BOP or a defendant may file a motion with the court requesting the modification of a term of imprisonment.[17]  The defendant, however, may file his motion only after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[18]

Assuming a defendant's § 3582(c)(1)(A) motion is procedurally properly, the court may modify a term of imprisonment if it finds that (1) "extraordinary and compelling reasons warrant such a reduction" and (2) "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."[19]  The First Step Act's amendment, however, has caused some division among courts concerning "what constitutes 'extraordinary and compelling reasons' warranting relief."[20]  This division stems from Congress directing the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."[21]  When § 3582(c)(1)(A) was first enacted, the Sentencing Commission complied with Congress's directive by issuing U.S.S.G. § 1B1.13 (Policy Statement).  But the Policy Statement has not

---

[16] *Id.*

[17] *See* 18 U.S.C. § 3582(c)(1)(A) ("the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant . . . .").

[18] *Id.*

[19] *Id.* § 3582(c)(1)(A)(i).  As an alternative to demonstrating "[e]xtraordinary and compelling reasons warrant the reduction," a defendant may be entitled to relief if he is "at least 70 years of age, has served at least 30 years in prison, . . . and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community."  *Id.* § 3582(c)(1)(A)(ii).  The court does not address this alternative avenue for relief because Pimm's Motion does not rely on it, and he is not seventy years old.

[20] *See United States v. Lopez*, Case No. 18-CR-2846 MV, 2020 WL 2489746, at * 2 (D. N.M. May 14, 2020).

[21] 28 U.S.C. § 994(t).

been updated to account for the First Step Act's amendments.[22]  Accordingly, parts of the Policy Statement appear to conflict with § 3582(c)(1)(A) as amended.[23]

As a result of this conflict, courts have split on how to determine whether "extraordinary and compelling reasons" exist warranting the reduction of a defendant's sentence.[24]  Some courts continue to look to the Policy Statement's application notes, which list specific circumstances that qualify as "extraordinary and compelling reasons."[25]  Other courts have determined the Policy Statement is "no longer an 'applicable policy statement'" and do not limit their analysis to the circumstances listed in the Policy Statement.[26]  "Although the Tenth Circuit has yet to resolve this issue definitively, it recently applied the [P]olicy [S]tatement in an unpublished opinion analyzing a motion for a sentence reduction under § 3582(c)(1)(A)."[27]

This court concludes it will apply the Policy Statement to the extent it is compatible with § 3582(c)(1)(A) to Pimm's Motion for three reasons: (1) this is the approach the Tenth Circuit recently took in *United States v. Saldana*,[28] (2) Pimm relies on the Policy Statement in his Motion,[29] and (3) neither party argues the court should do otherwise.

---

[22] *See Perez*, 2020 WL 1180719, at *2.

[23] *See id.*  For example, although § 3582(c)(1)(A) permits a defendant to file a compassionate release motion, the Policy Statement permits the court to reduce a sentence only "[u]pon motion of the Director of the [BOP]." U.S.S.G. § 1B1.13.

[24] *Lopez*, 2020 WL 2489746, at *2.

[25] *Id.*

[26] *Id.*

[27] *Id.* (citing *United States v. Saldana*, 807 F. App'x 816 (10th Cir. 2020) (unpublished)).

[28] *See* 807 F. App'x at 819.

[29] 434 Case: Dkt. 32 at 4.

4

The Policy Statement sets forth a three-part inquiry courts must undergo to determine whether to reduce a defendant's sentence.[30] First, the court determines whether "[e]xtraordinary and compelling reasons warrant the reduction."[31] Under the Policy Statement, there are "four categories of extraordinary and compelling reasons: (A) Medical Condition of the Defendant, (B) Age of the Defendant, (C) Family Circumstances, and (D) Other Reasons."[32] Second, the court applies the factors in 18 U.S.C. 3142(g) to determine if the defendant is "a danger to the safety of any other person or to the community."[33] It is the defendant's burden to demonstrate extraordinary and compelling reasons warrant reducing his sentence and that he is not a danger to the community.[34] If he meets his burden, the court must "consider[] the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable."[35] That is, the court must determine whether the factors in § 3553(a) support reducing the defendant's sentence and, if so, by how much.

## ANALYSIS

Pimm argues the court should modify his sentence because extraordinary and compelling reasons warrant the requested reduction, and he is not a danger to the community.[36] The

---

[30] *See* U.S.S.G. § 1B1.13. The Policy Statement includes a third element—that "[t]he reduction is consistent with this policy statement." *Id.* § 1B1.13(3). The court does not address this as a separate element, however, because to do so would be unnecessarily redundant. That is, the court is already obligated under 18 U.S.C. § 3582(c)(1)(A) to comply with the Policy Statement.

[31] U.S.S.G. § 1B1.13(1)(A).

[32] *Saldana*, 807 Fed. App'x at 819 (quoting U.S.S.G. § 1B1.13, cmt. n.1) (quotation marks omitted).

[33] U.S.S.G. § 1B1.13(2).

[34] *See United States v. Green*, 886 F.3d 1300, 1307–08 (10th Cir. 2018).

[35] U.S.S.G. § 1B1.13.

[36] 434 Case: Dkt. 32 at 4.

Government disagrees, arguing Pimm has not met his burden under either requirement.[37]  For the reasons explained below, the court concludes Pimm has not satisfied either element.

## I. Extraordinary and Compelling Reasons

Although the Policy Statement includes four categories that qualify as extraordinary and compelling reasons, Pimm's Motion relies on only one of those categories—the "Medical Condition of the Defendant."[38]  A defendant's medical condition may justify modifying a prison sentence if the defendant "is suffering from [1] a terminal illness[,] . . . [2] a serious physical or medical condition, . . . [3] a serious functional or cognitive impairment, or . . . [4] experiencing deteriorating physical and mental health because of the aging process."[39]  In addition, the defendant's medical condition must "substantially diminish[] [his] ability . . . to provide self-care within the environment of a correctional facility and [be one] from which he . . . is not expected to recover."[40]

Pimm argues the medical condition that justifies reducing his sentence is the possibility of him contracting COVID-19 combined with his age and underlying health conditions that could potentially exacerbate COVID-19's symptoms.[41]  The Government concedes that an inmate with a chronic medical condition that elevates the inmate's risk of becoming seriously ill from COVID-19 could constitute an extraordinary and compelling reason to reduce his sentence.[42]  The Government argues, however, that Pimm's conditions do not meet this standard because hypertension is "merely a condition that **might** be at increased risk of severe illness

---

[37] 434 Case: Dkt. 34 at 10–13.

[38] 434 Case: Dkt. 32 at 4.

[39] U.S.S.G. § 1B1.13, cmt. n.1(A)(i)–(ii).

[40] *Id.* § 1B1.13, cmt. n.1(A).

[41] 434 Case: Dkt. 32 at 4–7.

[42] 434 Case: Dkt. 34 at 11.

from COVID-19."[43]  Further, the Government contends that there are no COVID-19 cases at the Prison.[44]  The court agrees with the Government.

Although the court is sympathetic toward Pimm's health concerns in relation to COVID-19, those concerns "are too speculative to grant [his] request."[45]  The evidence before the court indicates that the Prison currently has no COVID-19 cases,[46] and hypertension is a condition that "might" increase the symptoms of COVID-19.[47]  And though Pimm's age may exacerbate COVID-19's effect, there is no indication that hyperthyroidism causes severe cases of COVID-19.[48]  These circumstances combined are insufficient to meet the high threshold set by the Policy Statement, which requires more than the possibility of a defendant contracting a disease in prison that may turn serious or even deadly.  Indeed, based on the information before the court, Pimm is as likely to contract COVID-19 at home as he is at the Prison.  Further, Pimm acknowledges he is receiving care for his current medical conditions and makes no allegations concerning his ability to care for himself.[49]  Accordingly, there is no extraordinary and compelling reason to reduce Pimm's sentence.

---

[43] *Id.* at 12.

[44] *Id.*

[45] *United States v. Wadley*, Case No. 2:18-cr-00408-DAK, 2020 WL 3270880, at *2 (D. Utah June 17, 2020) (citation omitted).

[46] COVID-19 Inmate Test Information, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last updated July 27, 2020).

[47] People with Certain Medical Conditions, Coronavirus Disease 2019 (COVID-19), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last updated July 17, 2020).

[48] *Id.*  Pimm offers one sentence to argue hyperthyroidism is relevant here: "Hyperthyroidism weakens the immune system from the treatments associated therefrom."  434 Case: Dkt. 32 at 4–5.  Pimm offers no support for this assertion and therefore fails to carry his burden of showing that his hyperthyroidism is relevant.

[49] 434 Case: Dkt. 32 at 4 ("As stated Defendant is diagnosed and medicated for Hypertension and Hyperthyroidism.").

Having concluded that Pimm has not satisfied the first element under § 3582(c)(1)(A), the court would ordinarily not proceed to address the remaining element. However, because the Tenth Circuit has not provided guidance on how to apply § 3582(c)(1)(A) and the Policy Statement in light of COVID-19, the court will assess the second element—dangerousness to the community—in the interest of completeness.

## II. Danger to the Community

The Policy Statement directs the court to assess the factors in 18 U.S.C. § 3142(g) to determine if a defendant remains a danger to the community.[50] Those factors include: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."[51]

Pimm never addresses these factors.[52] Instead, he posits he is not a danger because "he is at a minimum security camp, where he is allowed to drive vehicles and has free movement around the facility to go to work and various other activities."[53] The Government disagrees, arguing Pimm continues to pose a danger to the community because he has committed "fraud against his employers or others on at least three occasions" and violated a term of his supervised release at least once.[54] Again, the court agrees with the Government.

Pimm's criminal history and the nature of his crimes demonstrate he continues to be a threat to the community. In 2007, Pimm was charged with wire fraud and theft from an

---

[50] U.S.S.G. § 1B1.13(2).

[51] 18 U.S.C. § 3142(g)(1)–(4).

[52] 434 Case: Dkt. 32 at 4–7.

[53] *Id.* at 4.

[54] 434 Case: Dkt. 34 at 13.

employee benefit plan.[55] He pleaded guilty to the wire fraud charge, admitting that he had embezzled money from his employer to pay for personal expenses.[56] In 2014, he was charged with theft in Las Vegas, Nevada.[57] He pleaded guilty to the theft charge, admitting he stole money from his employer to pay for personal expenses.[58] In 2015, Pimm was charged with eleven counts of wire fraud and one count of a conspiracy to commit wire fraud.[59] He pleaded guilty to two counts of wire fraud, admitting he had engaged in a scheme to defraud his employer.[60] In 2018, Pimm was charged with nineteen counts of access device fraud.[61] He pleaded guilty to one count of access device fraud, admitting he transferred money from his client's account to pay for his personal expenses without the client's authorization.[62] At bottom, this history shows Pimm has, for more than a decade, consistently engaged in essentially the same criminal conduct: stealing money from his employers by means of fraud and deception. At times, Pimm has engaged in this conduct while simultaneously on probation or supervision for other criminal activity.

The court also observes at best an incompleteness and at worst a lack of complete candor in Pimm's submission. He represents to the court that his time in the Prison has involved him working hard, taking classes, and "keep[ing] his head down."[63] He further represents, "[i]n

---

[55] Case No. 2:07-cr-00527-TS (527 Case): Dkt. 1 at 3–5.

[56] 527 Case: Dkt. 12 at 5–6.

[57] Dkt. 434: Dkt. 33-2 at 15 (SEALED).

[58] *Id.* at 16 (SEALED).

[59] 483 Case: Dkt. 1 at 1–5.

[60] 483 Case: Dkt. 35 at 1, 3–4.

[61] 434 Case: Dkt. 1 at 1.

[62] 434 Case: Dkt. 17 at 1, 3–5.

[63] 434 Case: Dkt. 32 at 2.

9

candor[,] his confinement has been utterly uneventful."[64]  He fails to inform the court, however, that he was sanctioned and lost visiting privileges for thirty days because he contacted the public without authorization.[65]

In sum, Pimm continues to present a threat to the community.  He has a significant and serious criminal history of fraud and has fallen short of complete candor to the court.  Further, given the nature of Pimm's criminal history, the court is concerned about the availability of technology during home confinement as a potential vehicle for engaging in similar conduct if released from custody at this time.

## CONCLUSION

For the foregoing reasons, Pimm's Motion[66] is DENIED.

SO ORDERED this 18th day of August 2020.

BY THE COURT:

ROBERT J. SHELBY
Chief District Court Judge

---

[64] *Id.*

[65] 434 Case: Dkt. 33 at 4 (SEALED).

[66] 434 Case: Dkt. 32; 483 Case: Dkt. 66.